GROSS INCOME TAX DIVISION OF INDIANA *v.* L. S. AYRES & CO.

[No. 28,948. Filed March 31, 1954.]

*Edwin K. Steers,* Attorney General, *J. Emmett Mc-Manamon,* former Attorney General, *John J. McShane* and *Lloyd C. Hutchinson,* Deputy Attorneys General, and *Joseph E. Nowak,* and *Robert F. Wallace,* former Deputy Attorneys General, for appellants.

*Paul N. Rowe, Dan R. Winchell* and *Baker & Daniels,* of Indianapolis, for appellee.

EMMERT, J.—Appellee brought action in the trial court pursuant to §64-2614, Burns' 1951 Replacement, for the recovery of certain gross income taxes which it claimed were illegally and erroneously assessed and collected for the years 1942, 1943 and 1944. Its complaint set forth four classifications of transactions had by it with its customers or transferees of title to goods, wares and merchandise sold by appellee. The trial court made a general finding for the appellee, and entered judgment that it recover in full for each classification of items stated in the complaint. The appeal is from this judgment.

The appellee operated a department store in Indianapolis, and was engaged in the business of selling at retail. The rate for selling at retail, after a deduction of $3,000, pursuant to §64-2605, Burns' 1951 Replacement is ½ of 1% of the gross income.[1] Section 1 of the Gross Income Tax Act of 1933, as amended, §64-2601, Burns' 1951 Replacement, states:

"(j)　The term 'retail merchant' means and includes only a person regularly and occupationally engaged in purchasing tangible personal property and selling the same at retail at a fixed and established place of business.

"(k)　The term 'selling at retail' means and includes only a transaction by a 'retail merchant' by which the ownership of tangible personal property is transferred, conditionally or otherwise, for a consideration, when such transfer is made in the ordinary course of the transferer's regularly conducted business and at a fixed and established place of business, and is acquired by the transferee for any other purpose than those designated by subsection (a) of sec. 3 [§64-2603] of this act."

From the above it is quite apparent that selling under (k) has a broader meaning than selling under the Uniform Sales Act.[2] The definition of "selling at retail," controls the determination of the taxes due under the Gross Income Tax Act. Here, we are not controlled by the decisions on what constitutes a contract for work and labor, which is without

---

1. "With respect to that part of the gross income of every person who is a retail merchant as defined in this act which is received from selling at retail, the tax shall be equal to one-half of one per cent [½%] of such part of the gross income." Section 64-2603 (c), Burns' 1951 Replacement.

2. "(1) A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.

"(2) A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." Section 58-101, Burns' 1951 Replacement.

the provisions of §4 [statute of frauds provisions] of the Uniform Sales Act, §58-104, Burns' 1951 Replacement, or decisions on what constitutes a sale at common law under §58-101, Burns' 1951 Replacement. *Bradley Supply Co.* v. *Ames* (1934), 359 Ill. 162, 194 N. E. 272; *Swain Nelson & Sons Co.* v. *Dept. of Finance* (1937), 365 Ill. 401, 6 N. E. 2d 632; 1 Williston, Sales (Rev. Ed.) §9a, pp. 18, 19. Other provisions of the Sales Act may control as to the passing of title, but the Gross Income Tax Act fixes its own definitions, " 'and where, in an act it is declared that a term shall receive a certain construction, the courts are bound by that construction, though otherwise the language would be held to mean a different thing. *Smith* v. *State* (1867), 28 Ind. 321, 325. *State ex rel.* v. *Harrison* (1888), 116 Ind. 300, 307, 19 N. E. 146; *Arnett* v. *State ex rel.* (1907), 168 Ind. 180, 80 N. E. 153, 8 L. R. A. (N. S.) 1192, 25 R. C. L. 1049.' *State ex rel.* v. *Grange* (1929), 200 Ind. 506, 510." *Gross Income Tax Div.* v. *Crown Develop. Co., Inc.* (1952), 231 Ind. 449, 456 (note), 109 N. E. 2d 426, 428.

Also, "We have long held that to authorize the collection of a gross income tax a transaction must come clearly within the statutory provisions providing therefor. In case of doubt the statute will be construed against the state and in favor of the taxpayer. *Walgreen* v. *Gross Income Tax Division* (1947), 225 Ind. 418, 420, 75 N. E. 2d 784. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 591, 99 N. E. 2d 847. *Dept. of Treasury* v. *International Harvester Co.* (1943), 221 Ind. 416, 421, 47 N. E. 2d 150. *Oster* v. *Department of Treasury* (1941), 219 Ind. 313, 317, 37 N. E. 2d 528. *Department of Treasury* v. *Muessel* (1941), 218 Ind. 250, 255, 32 N. E. 2d 596. *United States* v. *Merriam* (1923), 263 U. S. 179, 188,

68 L. Ed. 240, 244, and cases cited." *Gross Income Tax Div.* v. *Crown Develop Co., Inc.* (1952), 231 Ind. 449, 455, 109 N. E. 2d 426, *supra.*

"The rate of tax is determined by the source of activity from which each item of the gross income is received, and does not depend upon the general character of the business in which the taxpayer is primarily engaged. *Oster* v. *Department of Treasury* (1941), 219 Ind. 313, 318, 37 N. E. 2d 528; *Storen* v. *J. D. Adams Mfg. Co.* (1937), 212 Ind. 343, 348, 7 N. E. 2d 941; *Dept. of Treas.* v. *Fairmount Glass Wks., Inc.* (1943), 113 Ind. App. 684, 688, 49 N. E. 2d 1; *Suabedissen-Wittner Dairy* v. *Dept. of Treas.* (1938), 105 Ind. App. 626, 630, 16 N. E. 2d 964, *supra.*" *Samper* v. *Indiana Dept. of State Revenue* (1952), 231 Ind. 26, 39, 106 N. E. 2d 797.

CLASS TWO RECEIPTS. The appellee at its store sold women's suits, coats, dresses, and corsets in its ready-to-wear departments. In some of the higher price brackets, 50% of the customers required some alterations. The sales tickets stated the price of the goods, plus the amount of work for alterations, separately. The prices charged for alterations were standard for Indianapolis, and the items for alteration charges vary according to the amount of work required. The state here takes a position directly opposite that it took in *Samper* v. *Indiana Dept. of State Revenue* (1952), 231 Ind. 26, 106 N. E. 2d 797, *supra.* In that case the state contended, with success, that the contract was not severable, while here it claims the contract is, and the alteration charges should be taxed at the rate of 1%. If the contract was not severable in the *Samper* case, *a fortiori* it is not severable here. We believe what a customer bargained for was a suit, coat, dress, or corset that fit her. Appellee guar-

antees the fit of the article to the customer's satisfaction, and the buyer had the right to refuse to accept it if in her opinion the fit was not satisfactory. Section 64-2603, Burns' 1951 Replacement, specifying the tax rates for various activities, should receive a practical construction. *Suabedissen-Wittner Dairy* v. *Dept. of Treas.* (1938), 105 Ind. App. 626, 629, 16 N. E. 2d 964; *Dept. of Treas.* v. *Ridgely, Exrx.* (1936), 211 Ind. 9, 4 N. E. 2d 557, 108 A. L. R. 1067. Something remained for the seller to do to put the goods in a deliverable state, and the property would not pass until that was done. Rule 2, §58-203, Burns' 1951 Replacement. This was a transfer of ownership of tangible property for a consideration, and made in the ordinary course of the regular conducted retail business at a fixed and established place of business within subsection (k), §64-2601, Burns' 1951 Replacement.

CLASS THREE RECEIPTS. Appellee engaged in the business of selling at retail rugs, carpets, and linoleums. These were cut and fabricated to fit the customer's floor, and were laid and fixed to the floor to the satisfaction of the customer. The charges made for the cutting, fabrication and installation amounted to approximately 10% of the full price of the floor covering. The form of contract used by Ayres stated that Ayres "agree to furnish merchandise and do work specified for the sum of ........." The price stated to the customer was the total of material, labor and installation. For the reasons stated under Class Two Receipts, this is a sale at retail. *Indiana Dept. of State Revenue* v. *Klink* (1953), 232 Ind. 473, 112 N. E. 2d 581; *Swain Nelson & Sons Co.* v. *Dept. of Finance* (1937), 365 Ill. 401, 6 N. E. 2d 632.

CLASS FOUR RECEIPTS. Appellee engaged in the business of making draperies for rooms of its cus-

tomers. The customer would choose the material, and the appellee would inspect the rooms, compute the amount of material and labor to be used, and make and install the draperies for a total price quoted to the customer. The amount of labor generally was about 33% of the total price. We see no substantial difference between this sort of transaction than the wall to wall floor covering sales, and for the same reasons we hold the draperies transactions were retail sales and to be taxed at one-half of one per cent (½%).

CLASS ONE RECEIPTS. Appellee shipped goods to parties in other states, and the trial court held the tax on the income from such transactions was a burden on interstate commerce and therefore exempt from gross income tax. An order would be placed by an Indiana resident for shipment of the goods to some out of state party. In each instance the appellee guaranteed the arrival of the goods in good condition, and we do not find any facts that would cause us to hold that title passed in Indiana. Appellee paid for the insurance and transportation cost, which were not added to the price. It is not necessary for us to determine whether these transactions were in fact sales within the definition of the Uniform Sales Act. If the contract was between the appellee and an Indiana resident, it was a contract for the benefit of a third party, by which title was transferred to the third party, and this is within the definition of "selling at retail" in §64-2601(k), Burns' 1951 Replacement, *supra*.

In *Gross Income Tax Div.* v. *Conkey Co.* (1950), 228 Ind. 352, 90 N. E. 2d 805, we held that income from the sale of bookcases by the appellee who shipped the bookcases to out of state third party customers were transactions in interstate commerce,

and so exempt from taxation by the Gross Income Tax Act. In the appeal at bar the goods were not shipped F. O. B. Indianapolis, but delivery to the out of state third party was guaranteed. Under Rule 5 of §58-203, Burns' 1951 Replacement (§19 of the Uniform Sales Act), "If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." A gross receipts tax on interstate commerce violates the Commerce Clause of the Federal Constitution. *Freeman* v. *Hewit* (1946), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265; *Adams Mfg. Co.* v. *Storen* (1938), 304 U. S. 307, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429.

Appellant has called our attention to certain evidence which it insists shows that for various reasons the finding was not sustained by sufficient evidence. Assuming without deciding this evidence would create conflicts, yet the trial court was the trier of the facts and resolved these questions against the appellant. We do not weigh the evidence on appeal.

Judgment affirmed.

Draper, C. J., Gilkison and Flanagan, JJ., concur.

Bobbitt, J., concurs with separate opinion.

## CONCURRING OPINION

BOBBITT, J.—I concur in the result and the reasoning of the majority opinion as to Classes Two, Three and Four.

Each transaction in Classes Two, Three and Four involved a service connected with and incidental to a sale. The clear intention of the customer was to pur-

chase a dress, suit, linoleum, carpet or draperies, as the case might be, and applying the rule in *Samper* v. *Indiana Dept. of State Revenue* (1952), 231 Ind. 26, 106 N. E. 2d 797, the transactions involved in these classes were indivisible contracts of sale of tangible personal property. Since such sales were made by a retail merchant from his established place of business income therefrom is taxable at ½ of 1%.

As to Class One, I desire to state more fully my reasons for the result reached.

The transactions in Class One consisted of contracts of sale between Indiana resident-customers and an Indiana retail merchant wherein the shipment and delivery of the merchandise purchased to persons-consignees outside the state were a part of the sales contract and necessary and essential to the consummation thereof.

The transactions, therefore, were not consummated until the merchandise purchased was received by the out of state consignee and the consummation of such transactions was an event which took place outside the state of Indiana and not within its borders. Cf: *International Harvester Co.* v. *Dept. of Treasury* (1944), 322 U. S. 340, 64 S. Ct. 1019, 88 L. Ed. 1313; *Department of Treasury* v. *Wood Preserving Corp.* (1941), 313 U. S. 62, 61 S. Ct. 885, 85 L. Ed. 1188.

The interstate shipment of the merchandise by appellee was an essential and necessary part of the sale and not merely incidental thereto. Cf: *Department of Treasury* v. *Allied Mills, Inc.* (1942), 220 Ind. 340, 42 N. E. 2d 34; *Gross Income Tax Division, etc.* v. *Warner Bros. Pictures Dist. Corp.* (1954), 233 Ind. 345, 118 N. E. 2d 117, (Dissenting opinion).

The source of the income here sought to be taxed was a sale which depended for its consummation upon the movement of the merchandise in interstate commerce. Such transactions, consummated by direct shipment of the merchandise purchased to out of state consignees are not intrastate transactions, although part of the sale took place in Indiana, but are interstate business, the income from which is not subject to the Indiana Gross Income tax. *Freeman* v. *Hewit* (1947), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265; *Gross Income Tax Div.* v. *Surface Comb. Corp.* (1953), 232 Ind. 100, 111 N. E. 2d 50; *Gross Income Tax Division, etc.* v. *Warner Bros. Pictures Dist. Corp.* (1954), 233 Ind. 345, 118 N. E. 2d 117.

NOTE.—Reported in 118 N. E. 2d 480.