INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION OF THE STATE OF INDIANA *v.* HOOSIER METAL FABRICATORS, INC., AN INDIANA CORPORATION

[No. 2-477A130. Filed August 24, 1978. Rehearing granted March 15, 1979. Transfer denied July 5, 1979.]

---

7. *See* footnote 6 herein.

*Theodore L. Sendak*, Attorney General of Indiana, *Daniel Lee Pflum*, Deputy Attorney General, for appellant.

*Michael J. Kiley, Thomas R. Hunt, Kiley, Osborn, Kiley, Harker & Rogers*, for appellee.

## OPINION ON REHEARING

BUCHANAN, C.J.—Defendant-appellant, Indiana Department of State Revenue, having filed its petition for rehearing and the Court having examined its opinion published at 379 N.E.2d 551, the Court hereby vacates and withdraws its previous opinion, and substitutes the following opinion in its stead. With this substituted opinion, the petition for rehearing is granted.

### FACTS

The facts and evidence most favorable to the judgment reveal:

Hoosier is an Indiana corporation located in Gas City, Indiana, and involved in the production of grommets and fabrications made from exotic metals of an experimental nature for use in jet aircraft engines.

Approximately ninety-nine (99%) percent of Hoosier's work is done for the Pratt-Whitney Aircraft Corporation (Pratt-Whitney) located in East Hartford, Connecticut, and West Palm Beach, Florida. As a prerequisite to the placement of orders, Pratt-Whitney required Hoosier to establish a quality control system and quality control manual. After approval of the system and manual, Pratt-Whitney assigned a quality control representative (QCR) to Hoosier's plant in Gas City, Indiana.

The QCR was present at Hoosier's plant approximately three days a week and was paid exclusively by Pratt-Whitney. His primary func-

tion was to inspect the manufacturing process to assure compliance with the quality control system.

Several witnesses testified that the QCR's authorization to ship a part to Pratt-Whitney did not constitute acceptance and that the QCR had no authority to accept or reject any part. Furthermore, there was evidence that Pratt-Whitney had subsequently accepted parts identified as defective by the QCR. Repeated testimony was given to the effect that final acceptance or rejection occurred only after shipment and re-inspection by Pratt-Whitney. The contract between the parties provided that shipment was to be made F.O.B. Gas City, Indiana, and that Pratt-Whitney had up to six months following delivery in which to reject any non-conforming part or shipment.

The State audited Hoosier for the calendar years of 1969 through 1974 and discovered that Hoosier had filed gross income tax returns for those years taking exemptions for income derived from sales to Pratt-Whitney as being income derived from interstate commerce.

The State disallowed the exemption and assessed additional taxes and interest against Hoosier, which Hoosier paid under protest. Hoosier subsequently filed a claim with the State for refund but the claim was denied. In 1975, Hoosier filed a complaint in the Grant County Circuit Court for refund of the additional taxes paid for the years 1969 through 1971, and in 1976, Hoosier filed a second complaint for recovery of additional taxes paid during 1972 through 1974. The causes were consolidated and the parties *stipulated* to the following issue:

> Whether or not the function and duties of the Quality Control Representative of Pratt-Whitney Aircraft at the Indiana Plant of Plaintiff constitutes final acceptability of the parts produced by Plaintiff in Indiana for Pratt-Whitney Aircraft at its Connecticut and Florida operations so as to make income derived from sales of these component parts subject to Indiana Gross Income Tax.

The parties also stipulated that the total refund, if recovered, would be Forty-four Thousand, One Hundred and 99/100 ($44,100.99) Dollars for the years 1969 through 1971, and Twenty-three Thousand, Two Hundred Sixty-one and 11/100 ($23,261.11) Dollars for 1972 through 1974.

The trial court found that the QCR did not accept or reject the parts

at Hoosier's plant in Gas City, Indiana, and therefore the sales to Pratt-Whitney resulted in income derived from interstate commerce. Accordingly, the trial court ordered the State to refund the stipulated amounts to Hoosier.

## ISSUES

The true issue before us is:

Has the State presented reversible error on appeal or are the parties bound by their stipulated issue?

## DECISION

CONCLUSION—The State has preserved no reversible error on appeal.

Even though the State has argued that the F.O.B. Gas City delivery term completed the sale within the state (Indiana) and therefore the income was not derived from interstate commerce, the State and Hoosier *stipulated* to the single issue of place of acceptance ... a stipulation which is binding upon the parties and operates as a waiver of all other questions. *Continental Casualty Co. v. Lloyd* (1905), 165 Ind. 52, 73 N.E. 824; *Miles v. Eltzroth* (1976), 170 Ind.App. 37, 351 N.E.2d 77.[1]

---

1. In view of conflicting case law, we reserve treatment of the issue of passage of title as a factor in the imposition of Indiana Gross Income Tax for a case in which the question is properly preserved for appeal.

In *Gross Income Tax Div. v. W. B. Conkey Co.* (1950), 228 Ind. 352, 90 N.E.2d 805, the Supreme Court stated:

> *The place at which title passed is not determinative.* It has been well said, "In determining whether commerce is interstate or intrastate, regard must be had to its essential character. Mere billing, or the place at which title passes is not determinative. *If the actual movement is interstate the power of Congress attaches to it. ...*" Pennsylvania R. Co. v. Clark Bros. Coal Mining Co., 1915, 238 U.S. 456, 35 S.Ct. 896, 59 L.Ed. 1406, 1410.
> (Emphasis added.)

*Id.* at 359-60, 90 N.E.2d at 808.

However, in *Gross Income Tax Div. v. L. S. Ayres & Co.* (1954), 233 Ind. 194, 118 N.E.2d 480, the Supreme Court made the following reference to passage of title as bearing on the issue of taxation:

> Appellee shipped goods to parties in other states, and the trial court held the tax on the income from such transactions was a burden on interstate commerce and therefore exempt from gross income tax. An order would be placed by an Indiana resident for shipment of the goods to some out of state party. In each in-

Consequently, no reversible error has been presented and the trial court's judgment must be affirmed.

Hoffman, J. concurs.

Sullivan, J. concurs with Opinion.

## CONCURRING OPINION ON REHEARING

SULLIVAN, J.—I concur in the substituted opinion upon Rehearing. I would additionally express my view, that, contrary to the position taken by the State upon rehearing, the stipulation with which we are concerned is not one of law. The stipulation is, rather, one with respect to the sole issue which was to be litigated and which was litigated. Stipulations which limit the issues for trial are often entered into for myriad tactical or strategic reasons. It is for this reason that I find the stipulation binding upon the State and it is for this reason that I join the majority in holding that the State preserved no reversible error upon appeal.

NOTE—Reported at 386 N.E.2d 963.

stance the appellee guaranteed the arrival of the goods in good condition, and *we do not find any facts that would cause us to hold that title passed in Indiana.* (Emphasis added.)

*Id.* at 201, 118 N.E.2d at 483.

*See also Dept. of Treasury v. Fairmount Glass Works* (1943), 113 Ind.App. 684, 46 N.E.2d 1.